IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL M. LONG, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFAULT JUDGMENT AND SUMMARY JUDGMENT**<br><br>2:24-cv-00598-RJS-JCB<br><br>District Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennet |

Before the court is Plaintiff United States of America's Motion for Summary Judgment and Default Judgment (Motion).[1]  The United States seeks a default judgment against Defendant Daniel M. Long on Count I of the Complaint, and summary judgment on Counts II and IV.[2]  Defendant Tara C. Long opposes summary judgment.[3]  For the reasons explained below, the court GRANTS the Motion.

---

[1] Dkt. 48, *United States' Motion for Summary Judgment and Default Judgment and Supporting Memorandum* (*Motion*).

[2] *Id.*

[3] Dkt. 52, *Defendant Tara C. Long's Memorandum in Opposition to United States' Motion for Summary Judgment* (*Opposition*).  For clarity, this Order refers to Daniel and Tara Long collectively as the Longs and individually by their first names.

## BACKGROUND[4]

### A.  Daniel's Unpaid Federal Taxes

This case concerns federal income tax judgments and property liens imposed against Daniel.[5]  For multiple years, Daniel failed to fulfill his federal tax obligations.[6]  In 2011, Daniel filed a timely federal income tax return.[7]  However, the Internal Revenue Service (IRS) determined he underreported and issued a Notice of Deficiency stating he owed an additional $1,880 in taxes.[8]  Daniel did not petition for a redetermination, and the IRS accordingly assessed his additional 2011 tax liability.[9]  He has not paid any amount towards the outstanding 2011 liability.[10]

Daniel also timely filed tax returns for 2013, 2014, 2015, and 2017.[11]  He owed $3,315 for the 2013 tax year; $6,988 for the 2014 tax year; $11,363 for the 2016 tax year; and $11,683 for the 2017 tax year.[12]  Daniel has made no payments towards the tax liabilities and also owes penalties for his failure to pay and statutory interest.[13]  As of June 30, 2025, Daniel owed $67,053.17 in federal taxes, penalties, and interest.[14]

---

[4] Unless otherwise stated, the following facts are not genuinely in dispute.  They are drawn from the parties' briefing and attached exhibits.  *See generally* Fed. R. Civ. P. 56(c).

[5] Dkt. 1, *United States' Complaint* (*Complaint*) ¶ 1.

[6] *Motion* ¶¶ 3–7.

[7] *Id.* ¶ 1.

[8] *Id.* ¶¶ 2–3.

[9] *Id.* ¶ 4.

[10] *Id.* ¶ 5.

[11] *Id.* ¶ 6.

[12] *Id.* ¶ 10.

[13] *Id.* ¶¶ 6–9.

[14] *Id.* ¶ 10.

The IRS assessed Daniel's 2011 tax liability on February 10, 2014; his 2013 tax liability on June 2, 2014; his 2014 tax liability on June 8, 2015; his 2015 tax on June 6, 2016; and his 2017 tax liability on October 29, 2018.[15]  On May 19, 2017, the IRS recorded a Notice of Federal Tax Liens (NFTL) against Daniel with the Salt Lake County Recorder for the 2011, 2013, 2014, and 2015 tax liens.[16]  On December 31, 2019, the IRS filed a NFTL for the 2017 tax lien.[17]  The NFTLs established "a lien in favor of the United States on all property and rights to property belonging to [Daniel] for the amount of [the] taxes, and additional penalties, interest, and costs that may accrue."[18]

### B.  The Longs' Relationship and Ownership of the Subject Property

Daniel married Tara in early 2015.[19]  In November 2016, Tara purchased a home in South Jordan, Utah (Subject Property).[20]  The down payment was $11,302.94,[21] $10,000 of which came from Daniel's parents as a gift to the Longs.[22]  On November 22, 2016, the deed was transferred from the prior owner to Tara.[23]  On November 28, 2016, Tara transferred the

---

[15] *Id.*

[16] *Id.* ¶ 12.  The NFTL was also timely refiled.  *See id.*

[17] *Id.*  The NFTL was also timely refiled.  See *id.*; *Opposition* ¶ 12.

[18] Dkt. 48-20, *2019 Notice of Federal Tax Lien*.

[19] *Motion* ¶ 21.

[20] *Id.* ¶ 22.  The Subject Property's Salt Lake County Tax Serial Number is 27-18-401-029 and is legally described as "Lot 203, Kennecott Daybreak Plat 6 Subdivision, Amending Lot 0S2 and VI of the Kennecott Master Subdivision #1, . . . . Also beginning at the Southwest Corner of said Lot 203; thence South [60 Deg. 27 Min 51 Sec] West 1 Foot; thence North [29 Deg. 32 Min 09 Sec.] East 1 Foot; thence South [29 Deg. 32 Min. 09 Sec] East 90 feet to the beginning."  *Id.* ¶ 23.

[21] *Id.* ¶ 24.

[22] *Id.* ¶ 23; *see also Opposition* ¶ 23 (contesting the effect of the Longs' testimony but admitting the "funds were a gift to the marital state").

[23] *Motion* ¶ 25.

property to herself and Daniel as joint tenants.[24]  During their marriage, the Longs shared

payment of the mortgage and Daniel typically paid half of the monthly bill.[25]

On November 13, 2018, Tara served a divorce decree upon Daniel.[26]  The decree

included a provision awarding the Subject Property to Tara as her sole and exclusive property.[27]

Daniel never responded to the divorce decree.[28]  The Utah State Third Judicial District Court

entered a default certificate in the matter on January 11, 2019, and entered the divorce decree on

January 14, 2019.[29]  The decree awards the Subject Property to Tara.[30]  It also states Daniel is

"solely responsible for his federal tax debts and will pay the entire debt."[31]  Tara paid Daniel no

additional consideration outside of the divorce decree for his share of the property.[32]  On August

2, 2021, Daniel executed a limited warranty deed and recorded the deed in the Salt Lake County

Recorder's Office.[33]

## PROCEDURAL HISTORY

On August 19, 2024, the United States filed a Complaint against Daniel, Tara, the State

of Utah Tax Commission, Salt Lake County, and PennyMac Loan Services, LLC.[34]  In April

---

[24] *Id.* ¶ 26.

[25] *Id.* ¶ 27.

[26] *Id.* ¶ 28.

[27] *Id.* ¶ 29.

[28] *Id.* ¶ 30.

[29] *Id.* ¶¶ 31–32.

[30] *Opposition*, ¶ 2; *See also Motion*, *Ex. 8* (*Divorce Decree*) at 4 (stating Tara "shall be awarded this property as her sole and exclusive property").

[31] *Divorce Decree* at 3.

[32] *Motion* ¶ 34; *see also Opposition* ¶ 34 (denying as stated but admitting the divorce "[d]ecree itself served as the consideration for the transfer of the property interest").

[33] The parties dispute the legal effect of this recording but not the recording itself. *Compare Motion* ¶ 33, *with Opposition* ¶ 33.  The deed is recorded as Doc. No. 13759078.  *Motion* ¶ 33.

[34] *Complaint*.

2025, the United States, Utah State Tax Commission, Salt Lake County, and PennyMac stipulated to the priority of liens against the Subject Property, and the court approved the stipulation.[35]

On November 13, 2024, a Clerk's Entry of Default Certificate as to Daniel was entered.[36] During his deposition on June 2, 2025, Daniel acknowledged learning about the lawsuit in the fall of 2024.[37]  He testified that he intended to defend himself in this case, that he was aware of the default entered, and he did not know if he intended to make any filings to defend against the default entry.[38]  Fact discovery closed on June 2, 2025.[39]

On June 27, 2025, the United States filed its Motion for default judgment against Daniel and for summary judgment on Counts II and IV.[40]  Tara filed an opposition to summary judgment on August 8, 2025.[41]  Daniel did not file an opposition.[42]  The United States filed its response to Tara on August 21, 2025.[43]  Pursuant to General Order 25-005, the case was stayed between October 2, 2025 and November 19, 2025.[44]  The Motion is now ripe and fit for review.

---

[35] Dkt. 46, *Stipulated Motion Regarding Relative Priority of Liens Against the Subject Property*; Dkt. 47, *Order Granting Stipulated Motion*.

[36] Dkt. 38, *Clerk's Entry of Default Certificate as to Daniel M. Long*.  The default was entered after Daniel was personally served at his residence within this judicial district on October 2, 2024.  *Motion* ¶ 16.

[37] *Motion* ¶ 18.

[38] *Id.* ¶ 19.

[39] *Id.* ¶ 20.

[40] *Id*.

[41] *Opposition*.

[42] *See generally Docket*.

[43] Dkt. 53, *Reply to Response to Motion for Summary Judgement* (*Reply*).

[44] *General Order 25-005, The Lapse of Appropriations for the Department of Justice and Majority of Federal Agencies*; Dkt. 54, *Docket Text Order Lifting Stay*.

## ANALYSIS

The United States seeks a default judgment against Daniel on Count I of the Complaint and summary judgment on Counts II and IV.  For the reasons explained below, the court concludes the United States is entitled to the relief requested.

## I.    The United States Is Entitled to Default Judgment Against Daniel.

### A.  Legal Standard

"Strong policies favor resolution of disputes on the merits."[45]  However, the district court has discretion to enter a default judgment "when the adversary process has been halted because of an essentially unresponsive party."[46]  Default judgments exist to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."[47]

When a plaintiff seeks default against a defendant who has failed to defend the suit, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[48]  Once jurisdiction is confirmed, the court must decide whether the well-pleaded factual allegations—which are admitted by defendants upon default—are sufficient to support the judgment.[49]

---

[45] *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)); *see also* 10A Charles Alan Wright & Arthus R. Miller, *Federal Practice and Procedure* § 2693 (4th ed. 2025) ("Despite the strength of the policies supporting the use of the default penalty, federal judges view default judgments with disfavor. This is because they favor trials on the merits with full participation by all the parties.").

[46] *In re Rains*, 946 F.2d at 733; *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) ("Decisions to enter judgment by default are committed to the district court's sound discretion."); *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997) (same).

[47] *In re Rains*, 946 F.2d at 732 (quoting *H.F. Livermore Corp.*, 432 F.2d at 691).

[48] *Deville v. Wilson*, 208 Fed. App'x 629, 631 (10th Cir. 2006) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[49] *Bixler v. Foster*, 596 F.3d 751, 761–62 (10th Cir. 2010).

*B.  Analysis*

1.  The Court Has Jurisdiction.

The court has jurisdiction over Daniel and the subject matter here.  The court has personal jurisdiction if venue is proper, subject matter jurisdiction exists, and the party was served according to Federal Rule of Civil Procedure 4.[50]  All three elements are met here.  Venue is proper because a substantial part of the events giving rise to the claim occurred here: Daniel resides in this judicial district, his principal place of business is in this district, and the subject property is in this district.[51]  The court has subject matter jurisdiction because the claim arises under the federal Internal Revenue Code (I.R.C.).[52]  And service satisfied Rule 4 because Daniel was personally served at his residence within this judicial district.[53]  Accordingly, the court has jurisdiction.

2.  The Well-Pleaded Allegations Are Sufficient to Establish the Validity of Mr. Long's Tax Assessments.

I.R.C. § 7402 permits this court "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."[54]  The government establishes a prima facie case to collect unpaid taxes "when it shows a timely assessment of the tax due, supported by a minimal evidentiary foundation, at which point a presumption of

---

[50] *See Okla. Radio Assocs.*, 969 F.2d 940, 943 (10th Cir. 1992).

[51] *See* 28 U.S.C. § 1391(b) (venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated").

[52] *Complaint* ¶¶ 37–48 (Count I arises under I.R.C. §§ 6303, 6331, 6502, 6503, 7402).  This court has jurisdiction over cases involving "the enforcement of the internal revenue laws," I.R.C. § 7402; over "any civil action arising under any Act of Congress providing for internal revenue," 28 U.S.C. § 1340; and over "all civil actions, suits or proceedings commenced by the United States," 28 U.S.C. § 1345.  The Tenth Circuit has confirmed the applicability of these statutes in similar cases.  *See United States v. Dawes*, 161 F. App'x 742, 745 (10th Cir. 2005) (unpublished); *United States v. Novotny*, 71 F. App'x 792, 795 (10th Cir. 2003) (unpublished).

[53] Dkt. 23, *Proof of Service*; *see also* Fed. R. Civ. P. 4(e)(2)(A) (service may be effectuated by "delivering a copy of the summons and of the complaint to the individual personally").

[54] I.R.C. § 7402(a).

correctness arises."[55]  "For purposes of granting summary judgment, a Certificate of Assessments and Payments (Form 4340) is sufficient evidence that an assessment was made in the manner prescribed by [the I.R.C. and relevant regulation]."[56]  "A presumption of correctness attaches to the Commissioner's assessment," and "[t]his presumption will permit judgment in the Commissioner's favor unless the opposing party produces substantial evidence overcoming it."[57]

The evidence before the court provides more than the minimum evidentiary foundation necessary to warrant judgment here.  In support of its Motion, the United States has submitted certified copies of the IRS Forms 4340, "Certificate of Assessments, Payments, and Other Specified Matters," for each of the relevant tax years.[58]  The Forms 4340 disclose the existence, date, and amount of the tax assessment against Daniel.[59]  These Forms are entitled to a presumptive of correctness.[60]  The United States has also introduced unchallenged testimony from IRS Technical Advisor Wanda Manley and transcripts from the IRS calculating the amount Daniel owes on a particular assessment.[61]  Manley provides the mathematical computations determining the current balances.[62]  She concludes that Daniel's total unpaid balance as of June

---

[55] *United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991).

[56] *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992) (collecting cases where the Form 4340 established government's prima facie case); *see also Guthrie v. Sawyer*, 970 F.2d 733, 737 (10th Cir. 1992) (Forms 4340 "are routinely used to prove that a tax assessment has in fact been made [and] are presumptive proof of a valid assessment" (citation modified)).

[57] *McMullin*, 948 F.2d at 1192.

[58] Dkt. 48-14, *Certificate of Assessment, Payments, and Other Specified Matters* (2011 Form 4340); Dkt. 48-15, *Certificate of Assessment, Payments, and Other Specified Matters* (2013 Form 4340); Dkt. 48-16, *Certificate of Assessment, Payments, and Other Specified Matters* (2014 Form 4340); Dkt. 48-17, *Certificate of Assessment, Payments, and Other Specified Matters* (2015 Form 4340); Dkt. 48-18, *Certificate of Assessment, Payments, and Other Specified Matters* (2017 Form 4340) [hereinafter, collectively *Forms 4340*].

[59] *See Forms 4340*.

[60] *See McMullin*, 948 F.2d at 1192.

[61] Dkt. 48-11, *Declaration of Wanda Mandley in Support United States' Motion for Summary Judgment and Default Judgment* (*Manley Declaration*); Dkt. 48-12, *INTSTD* (transcripts reflecting the federal income taxes, penalties, and interested against Daniel that accrued as of June 30, 2025).

[62] *Manley Declaration* ¶¶ 3–20.

30, 2025 is $67,053.17.[63]  No evidence in the record challenges this total.[64]  Accordingly,

Default Judgment against Daniel is appropriate for the federal tax assessments and civil penalty

assessments in the amount of $67,053.17 for the 2011, 2013, 2014, 2015, and 2017 tax years.[65]

## II.     The United States Is Entitled to Summary Judgment on Counts II and IV.

The United States also moves for summary judgment on the remaining counts,[66] which

seek (1) a determination that the United States's tax lien properly attached and remains attached

to the Subject Property and (2) an Order foreclosing the federal tax liens encumbering the

Subject Property.[67]  Tara opposes the Motion.[68]

### A.  Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."[69]  A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[70]  A fact

is material if, under the governing substantive law, it could "affect the outcome of the suit."[71]

The nonmovant "may not rest upon mere allegations or denials" of the pleadings.[72]  When

---

[63] *Id.* ¶ 20.

[64] *See Opposition* at 1 ("Tara Long does not oppose the Untied States obtaining a monetary judgment against her ex-husband, Daniel M. Long").  Daniel did not respond to the Motion.

[65] Plus the amount of interest and statutory additions that have and will continue to accrue since June 30, 2025.  *See Motion* ¶ 10; *Manley Declaration* ¶ 20.

[66] *Motion* at 13–16.

[67] *Complaint* at 8–10, 11–12 (Counts II and IV).  The United States asserts Count III only to the extent the court does not grant Count II.  Because the court grants summary judgment on Count II, Count III is dismissed as moot. *See id.* ¶¶ 59–70.

[68] *See Opposition*.

[69] Fed. R. Civ. P. 56(a).

[70] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[71] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[72] *Anderson*, 477 U.S. at 248 (quoting *First Nat. Bank of Ariz. v. Cities of Serv. Co.*, 391 U.S. 253, 288 (1968)).

applying this standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party."[73]

*B.   Analysis*

1. The Tax Liens Attached to Daniel's Interest in the Subject Property Prior to the Divorce Decree.

A tax lien arises on the date of assessment and attaches to all of the taxpayer's property and rights to property.[74]   Under I.R.C. § 6321, if a person fails to pay federal taxes that have been properly assessed, "the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."[75]   "[T]he lien imposed by Section 6321 shall arise at the time the assessment is made and shall continue until the liability . . .  is satisfied . . ."[76]   In *United States v. McDermott*, the Supreme Court explained Sections 6321 and 6322 create "a lien in favor of the United States on all real and personal property belonging to the [taxpayer], . . . including after-acquired property."[77]   When the taxpayer acquires the property, the federal lien attaches, under an "after-acquired property provision."[78]

Transferring or conveying the property does not affect the lien: the property passes encumbered.[79]   Thus, the third party "holds the property subject to the lien unless the third party

---

[73] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[74] I.R.C. §§ 6321, 6322.

[75] *Id.* § 6321.

[76] *Id.* § 6322.

[77] *United States v. McDermott*, 507 U.S. 447, 448 (1993).

[78] *Id.* at 453.

[79] *United States v. Bess*, 357 U.S. 51, 57 (1958).

has a prior lien or comes within one of the exceptions of 26 U.S.C. § 6323."[80]  Section 6323

renders the lien invalid "against any purchaser, holder of a security interest, mechanic's lienor, or

judgment lien creditor" who does not have requisite notice of the preexisting lien.[81]  Notice is

satisfied if the lien is filed with the State.[82]  A purchaser is defined as "a person who, for

adequate and full consideration in money or money's worth, acquires an interest (other than a

lien or security interest) in property which is valid under local law against subsequent purchasers

without actual notice."[83]  A party seeking "purchaser" status under Section 6323 has the burden

of proof to establish they paid adequate consideration.[84]

Here, by June 2016, the IRS had assessed Daniel's tax liability for 2011, 2013, 2014, and

2015.[85]  Tara transferred the property to Daniel and herself as joint tenants on November 28,

2016.[86]  Since the tax liability had already been assessed, the tax liens arising from the 2011,

2013, 2014, and 2015 tax year liabilities attached to Daniel's joint interest in the Subject

Property as soon as he acquired it.[87]

---

[80] *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir. 1989).

[81] I.R.C. § 6323(a).

[82] *Id.* § 6323(f)(1)(A)(i).

[83] *Id.* § 6323(h)(6).

[84] *See Donald v. Madison Indus., Inc.*, 483 F.2d 837, 845 (10th Cir. 1973) (taxpayer bears the "burden of proof . . . to show[] the superiority of his claims under section 6323"); *see also Resol. Trust Corp. v. Gill*, 960 F.2d 336, 344 (3rd Cir. 1992); *United States v. McCombs*, 928 F. Supp. 261, 267 (W.D.N.Y. 1995); *United States v. Whitman*, No. 1:23-cv-57-LAG, 2025 WL 961436, at *16 (M.D. Ga. Mar. 31, 2025).

[85] *Motion* ¶ 10.

[86] *Id.* ¶ 26.

[87] *See McDermott*, 507 U.S. at 448.

The IRS assessed Daniel's tax liability for 2017 on October 29, 2018.[88] At that time, Daniel had a joint interest in the Subject Property.[89] Accordingly, the lien attached to the property when the liability was assessed on October 29, 2018.[90]

Tara briefly argues that the 2017 tax liability did not attach until it was recorded on December 31, 2019.[91] The parties do not dispute the time of the recording.[92] But, the recording affects the lien only if Tara qualified as a purchaser under the Section 6323(a) exception. Tara argues, "The consideration was the global and equitable distribution of all marital assets and liabilities" in the court-order division of the marital estate.[93] However, she cites no authority— statutory, precedent, or otherwise—establishing that a division of a marital estate satisfies the purchaser exception under Section 6323.[94] Accordingly, Tara fails to satisfy her burden. The court finds the tax liabilities attached to the Subject Property before the divorce decree was issued.

2. The Subject Property Transferred Encumbered, Because the Divorce Decree Did Not Extinguish the Attached Lien.

Tara argues the divorce decree extinguished Daniel's interest in the property.[95] The court disagrees.

---

[88] *Motion* ¶ 10.

[89] *Id.* ¶ 32 ("The Third Judicial Circuit of Salt Lake County, Utah entered the divorce decree on January 14, 2019."); *see also* Dkt. 48-7, *Divorce Docket* (divorce decree conveying Subject Property was entered on January 14, 2019).

[90] *See* I.R.C. §§ 6321–22.

[91] *Opposition* at 10.

[92] *See id.*; *Reply* at 4.

[93] *Opposition* at 10.

[94] *See id.* at 10–11.

[95] *Id.* at 8.

"[O]nce a lien attache[s] to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest."[96] Transferring or conveying the property does not affect the lien: the property passes encumbered.[97] Here, Daniel's interest was transferred to Tara through the divorce decree. This method of transfer did not extinguish the lien but rather transferred to Tara his interest subject to the lien.[98]

Tara argues the lien only attached to Daniel's interest in the property; the state court divorce decree had power to distribute marital property and did so by extinguishing Daniel's interest in the Subject Property; and the United States's interest is limited to what Daniel's would be, which is now zero.[99] This argument is unpersuasive. Tara heavily relies on *United States v. Gibbons*[100] to argue the United States is only empowered to "step into the shoes of Daniel Long today" and Daniel has no interest in the Subject Property today.[101] But *Gibbons* does not apply because the divorce decree in *Gibbons* was executed before any tax liens attached to property that was previously owned by the marital estate.[102] Here, the relevant liens attached to the property prior to the divorce decree and then the property was conveyed. Tara cites no authority establishing a divorce decree may extinguish an already-attached lien.[103] The court must apply

---

[96] *United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983) (citation modified); *see also Bess*, 357 U.S. at 57 ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter whose hands the property goes, it passes cum onere." (citation modified)).

[97] *Bess*, 357 U.S. at 57.

[98] *Cache Valley Bank*, 866 F.2d at 1244–45.

[99] *Opposition* at 7–10.

[100] 71 F.3d 1496 (10th Cir. 1995).

[101] *Opposition* at 7–9.

[102] *Gibbons*, 71 F.3d at 1498.

[103] *See generally Opposition*.

the rule: the lien was not extinguished by the transfer of property.  Accordingly, the Subject

Property transferred to Tara subject to the lien.

### III.    Foreclosure Is Appropriate.

The United States asks the court to order foreclosure of Daniel's tax liens in his former

interest in the Subject Property.[104]  Tara opposes foreclosure based on her substantive arguments

rejected above.[105]

The I.R.C. "authorizes the judicial sale of certain properties to satisfy the tax

indebtedness of delinquent taxpayers."[106]  Under Section 7403(a), "the Government may

'enforce its lien,' [and] it may seek to subject *any property*, of whatever nature, of the

delinquent, or *in which he has any right, title, or interest*, to the payment of such tax or

liability."[107]  Here, Daniel has failed to pay his federal tax and penalty assessments.  The federal

tax liens attached on the day of assessment.[108]  For the reasons explained, the Subject Property

transferred to Tara encumbered.  Accordingly, foreclosure is appropriate.

### CONCLUSION

For the foregoing reasons, the Motion is GRANTED.[109]  The Court GRANTS the United

States default judgment against Daniel and summary judgment on Counts II and IV.  The Court

DENIES WITHOUT PREJUDICE Defendant's request for its costs.[110]

---

[104] *Motion* at 15–16.

[105] *See Opposition* at 11.

[106] *Rodgers*, 461 U.S. at 680.

[107] *Id.* at 692 (citation modified) (emphasis in original) (quoting I.R.C. § 7403(a)).

[108] *See* I.R.C § 6321.

[109] Dkt. 48.

[110] The Motion asks the court to "[a]ward the United States its costs and any other relief that is just and proper," but does not provide any legal authority empowering the court to do so.  *Motion* at 17.  If desired, the United States may file another motion seeking fees and costs in accordance with Local Rule 54-2.  D.U. Civ. R. 54-2.

The court enters Judgment for the United States and against Defendant Daniel M. Long on the federal income tax assessments for 2011, 2013, 2014, 2015, and 2017 tax years together with the civil penalty assessments for the same tax years in the amount of $67,053.17, plus statutory interest and other additions accruing after June 30, 2025.

The court also ORDERS the United States's lien be foreclosed upon the Subject Property, that the Subject Property be sold, and the proceeds from the sale be distributed to the United States, the Utah State Tax Commission, Salt Lake County, and PennyMac according to the stipulated lien priority.[111]

The Clerk of Court is directed to close the case.

SO ORDERED this 20th day of November, 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[111] *Stipulated Motion Regarding Relative Priority of Liens Against the Subject Property*; *Order Granting Stipulated Motion.*